**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GREENPEACE, INC.
702 H Street NW, Suite 300
Washington, DC 20001,

Plaintiff,

v.

DEPARTMENT OF HOMELAND SECURITY,
3801 Nebraska Avenue NW
Washington, DC 20016,

and

NATIONAL PROTECTION AND PROGRAMS DIRECTORATE,
245 Murray Lane SW
Washington, DC 20528,

Defendants.

Civil Action No.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. The Department of Homeland Security (DHS) and the National Protection and Programs Directorate (NPPD), a component of DHS, have failed to comply with their agency head's appellate decision rejecting their attempted invocation of an inapplicable exemption under the Freedom of Information Act (FOIA) and ordering the release of certain records in accordance with that decision. In so doing, DHS and NPPD have violated FOIA and their own FOIA regulations.

2. Plaintiff Greenpeace, Inc. brings this action to compel DHS and NPPD to abide by the agency head's appellate decision, FOIA, and FOIA regulations requiring them to produce

unredacted copies of records generated as part of the Chemical Facility Anti-Terrorism Standards (CFATS). This action arises under FOIA, 5 U.S.C. § 552, the Administrative Procedure Act (APA), 5 U.S.C. §§ 702 & 706, the Mandamus and Venue Act, 28 U.S.C. § 1361, and the All Writs Act, 28 U.S.C. § 1651.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1361, and 5 U.S.C. § 552(a)(4)(B). Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

**PARTIES**

4. Plaintiff Greenpeace, Inc. is a nonprofit organization that uses peaceful protest and creative communication to expose global environmental problems and to promote solutions that are essential to a green and peaceful future.

5. Defendant DHS is an agency of the United States and defendant NPPD is a component of DHS. Defendants have possession and control over the records that plaintiff seeks.

**STATUTORY FRAMEWORK**

6. Subject to nine specific exemptions, FOIA requires agencies to promptly disclose records responsive to a FOIA request. 5 U.S.C. § 552(a)(3). Exemption 7(F) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … (F) could reasonably be expected to endanger the life or physical safety of any individual." *Id.* § 552(b)(7)(F).

7. FOIA and DHS regulations provide that if DHS intends to deny a FOIA request in whole or in part, DHS must provide a brief explanation in writing indicating its reasons for doing

so. 5 U.S.C. § 552(a)(6)(A)(i); 6 C.F.R. § 5.6(c)(2) (2003).[1]

8. FOIA and DHS regulations further provide that if a request is denied, the requester has the right to appeal "to the head of the agency", 5 U.S.C. § 552(a)(6)(A)(i); 6 C.F.R. § 5.9(b), whose authority DHS has delegated by regulation to "the Associate General Counsel (General Law), Department of Homeland Security, Washington, DC 20528," 6 C.F.R. § 5.9(a). Pursuant to a July 8, 2011, memorandum, DHS further delegated appellate authority to the United States Coast Guard Administrative Law Judge (ALJ) program.

9. DHS regulations provide that if an adverse determination is reversed on appeal, the FOIA request "will be reprocessed in accordance with that appeal decision." 6 C.F.R. § 5.9(b).

## FACTUAL BACKGROUND

**DHS's Regulation of the Security of High-Risk Chemical Facilities.**

10. Section 550 of the 2007 Department of Homeland Security Appropriations Act directed DHS to develop and adopt a regulatory framework to address the security of chemical facilities that DHS determines pose high levels of risk. On April 9, 2007, DHS published an Interim Final Rule, known as the CFATS, to implement this directive. The CFATS program identifies and regulates high-risk chemical facilities to ensure they have security measures in place to reduce the risks associated with these chemicals.[2]

[1] Effective December 22, 2016, DHS amended its FOIA regulations. *See* Freedom of Information Act Regulations, 81 Fed. Reg. 83625 (Nov. 22, 2016). All references to DHS FOIA regulations throughout this Complaint are to the prior version of the regulations that were in effect from 2003 through December 22, 2016. The prior regulations were in effect throughout the pendency of Greenpeace's FOIA request and subsequent administrative appeals.

[2] The Protecting and Securing Chemical Facilities from Terrorist Attacks Act of 2014, Pub. L. 113-254 (6 U.S.C. § 621, *et seq.*), reauthorized the CFATS program for four years.

11. On November 20, 2007, DHS published Appendix A to CFATS, which lists 322 chemicals of interest—including common industrial chemicals such as chlorine, propane, and anhydrous ammonia—as well as specialty chemicals, such as arsine and phosphorus trichloride. Implementation of the CFATS regulation requires the Department to identify which facilities it considers high-risk based on the level of chemicals of interest at the facilities, and then requires these facilities to complete Security Vulnerability Assessments, develop Site Security Plans, and implement protective measures necessary to meet risk-based performance standards established by the Department.

12. On February 3, 2012, Mr. Rand Beers, Under Secretary of NPPD, testified before the House Committee on Energy and Commerce, Subcommittee on Environment and the Economy, with respect to the progress implementing CFATS. *See Testimony of Rand Beers, NPPD Under Secretary, before the H. Comm. on Energy and Commerce, Subcomm. on Environment* (2012), https://www.dhs.gov/news/2012/02/02/written-testimony-nppd-house-energy-and-commerce-subcommittee-environment-and. In that testimony. Mr. Beers stated that "since CFATS' inception, more than 1,600 facilities completely removed their chemicals of interest, and more than 700 other facilities have reduced their holdings of chemicals of interest to levels resulting in the facilities no longer being considered high-risk." *Id.* He further testified that the changes at these facilities "have helped reduce the number of high-risk chemical facilities located throughout the nation, and have correspondingly made the nation more secure." *Id.* Similarly, officials have indicated that, as of February 2014, "more than 3,000 facilities have eliminated, reduced or modified their holdings of chemicals of interest," further reducing the number of high-risk facilities. *See Written testimony of NPPD Office of Infrastructure Protection Assistant Secretary Caitlin Durkovich for a H. Comm. on Homeland Security, Subcomm. on Cybersecurity,*

*Infrastructure Protection, and Security Technologies hearing titled "H.R. 4007, the Chemical Facility Anti-Terrorism Standards (CFATS) Authorization and Accountability Act of 2014"* (2014), https://www.dhs.gov/news/2014/02/27/written-testimony-nppd-house-homeland-security-subcommittee-cybersecurity.

**Greenpeace's FOIA Request and Initial Appeal.**

13. On May 18, 2012, Greenpeace submitted a FOIA request to DHS seeking documents reflecting the lists of no-longer-high risk facilities referred to by DHS officials. Specifically, the FOIA request sought "all releasable documents and records that contain the most complete listing of chemical facilities that have reduced their holdings of threshold quantities of 'chemicals of interest' (COI) rendering them no longer 'high risk' facilities under CFATS."[3]

14. Nearly one year later, by letter dated March 13, 2013, DHS staff issued an interim response to Greenpeace's request. The response provided that a search of NPPD for responsive documents produced 123 pages of results, but that DHS was withholding those documents in full based on FOIA exemptions 5, 7(E), and 7(F). As relevant here, DHS provided no specific explanation why exemption 7(F) applied, but merely parroted the statutory text: "**FOIA Exemption 7(F)** permits the government to withhold all information about any individual when disclosure of information about him could reasonably be expected to endanger the life or physical safety of any individual. This exemption also protects physical security at critical infrastructure sites." *Id.*

[3] Greenpeace also requested "copies of any and all documents that describe any safer chemicals, processes or methods these same facilities adopted to no longer be classified as 'high risk' facilities under CFATS." That portion of the request is not the subject of this action.

15. On May 12, 2013, Greenpeace submitted an appeal of the interim response and argued that none of the cited FOIA exemptions provided grounds for withholding the information sought. Greenpeace explained that exemption 7(F) did not apply because the information Greenpeace requested—which is limited to only those facilities that are no longer regarded as "high-risk"—is of no meaningful use to those who may wish to attack a chemical plant, and that DHS failed to identify with reasonable specificity the possible harm or danger that could result from the release of the records.

16. On May 17, 2013, DHS acknowledged receipt of Greenpeace's appeal.

17. Nearly one year later, by letter dated June 27, 2014, the ALJ issued a decision agreeing with Greenpeace and reversing DHS and NPPD's decision to withhold the records. The ALJ explained that "[a]fter a thorough review of [the] appeal and all applicable documents and the Agency's subsequent explanation … [t]he Agency has not provided adequate explanation as to why the requested records should be withheld pursuant to FOIA Exemptions (b)(5), (b)(7)(E) or (b)(7)(F)." *Id.* Finally, the ALJ informed Greenpeace that, pursuant to DHS regulation 6 C.F.R. § 5.9, Greenpeace's FOIA request would be "reprocessed in accordance with th[e] appeal decision."

**Defendants' Failure to Comply with their Own Agency's Appellate Decision.**

18. On remand, after an additional six-month delay, DHS staff responded to Greenpeace by letter dated December 15, 2014. In that letter, DHS personnel stated that they had "reprocessed the list of chemical facilities" and were "releasing *portions* of that list" to Greenpeace. However, in direct contravention of the agency head's decision on the administrative appeal, the produced records were almost entirely redacted, based on one of the same exemptions, 7(F), that was rejected by the ALJ as a basis for withholding: "The redacted information is being

withheld pursuant to 5 U.S.C. § 552(b)(7)(F) because it constitutes information compiled for law enforcement purposes the disclosure of which could reasonably be expected to endanger the life or physical safety of any individual." *Id.* Thus, in substance, DHS continued to withhold the documents in their entirety.

19. Although the responsive document should have reflected a list of approximately 3,000 facilities that are no longer considered high risk, the 123 redacted pages produced by DHS reflect a small portion of that number. As best Greenpeace can discern, the records include only 418 line entries, and only 248 of these could reflect the names of chemical facilities. The other 170 entries provide information such as the names of cities or states (for example, "Florida," "Salem," "Grant Nebraska," or "Greenwood Mississippi"), street names (for example, "College Street" or "Frenz Drive"), or out-of-context references (for example, "Industry," "Headquarters," or "Physical Education Building").

20. Additionally, DHS's response contained 20 *blank* pages, without any redaction information, claimed exemptions, or explanation.

**Greenpeace's Second Appeal and the ALJ's Asserted Inability to Compel Defendants' Compliance with its Decision**

21. On February 13, 2015, Greenpeace administratively appealed the second response. Greenpeace argued that DHS's response ignored the ALJ's order, was indecipherable due to the excessive redactions, and failed to provide an adequate explanation for the redactions as required by law and the prior appellate order. Greenpeace explained that DHS FOIA staff's invocation of exemption (7)(F) throughout the redacted records, despite the prior ALJ order, was unsupportable because Greenpeace was only requesting information about facilities that no longer maintain threshold quantities of the chemicals of interest under CFATS. Such information, Greenpeace pointed out, could not pose a security risk or threaten lives.

22. By letter dated August 25, 2015, the ALJ responded to Greenpeace but pleaded helplessness in the face of DHS's refusal to comply with the earlier ALJ decision. The letter stated that the prior appellate decision "constitute[d] final agency action," and that although "NPPD is obligated to comply" with that prior decision, the ALJ "ha[s] no ability to force compliance if an Agency does not adequately obey our appellate decisions." The letter further stated that the appeal was dismissed and that Greenpeace "may now appeal NPPD's actions to federal court." *Id.*

## FIRST CLAIM FOR RELIEF
## (FOIA)

23. The ALJ's June 27, 2014, determination constitutes the final decision of DHS with respect to Greenpeace's FOIA request. Pursuant to that decision, Greenpeace has a right under FOIA and DHS regulations to the entirety of the requested records. Defendants have no legal basis for refusing to produce these records in full.

24. In violation of FOIA and DHS regulations, and despite the determination by the agency head that the requested records are not exempt from disclosure, DHS has continued to withhold the requested records.

25. In violation of FOIA and DHS regulations, and the ALJ's June 27, 2014, decision, defendants have redacted the requested records.

26. Greenpeace has exhausted applicable administrative remedies with respect to its FOIA request.

27. Under 5 U.S.C. § 552(a)(4), Greenpeace is entitled to declaratory and injunctive relief compelling the release and disclosure of the requested agency records, without redactions.

**SECOND CLAIM FOR RELIEF**
**(APA)**

28. DHS FOIA regulations provide that where an adverse FOIA determination is reversed, the FOIA request "will be reprocessed in accordance with that appeal decision." 6 C.F.R. § 5.9(b).

29. After the ALJ reversed the decision of DHS to withhold the requested records, concluded that exemption (7)(F) did not apply, and ordered defendants to produce the requested records to Greenpeace, DHS was required to process the FOIA request in accordance with the ALJ's decision.

30. Defendants' refusal to comply with the ALJ's June 27, 2104, decision constitutes an agency decision to unlawfully withhold agency action, and defendants' continued reliance on exemption (7)(F) to redact the requested records constitutes unlawful agency action.

31. Greenpeace has been and will continue to be harmed by defendants' unlawful withholding of agency action because defendants continue to withhold non-exempt information from Greenpeace.

32. If no relief is available under FOIA, Greenpeace is entitled to declaratory and injunctive relief under 5 U.S.C. § 706, compelling the release and disclosure of the requested agency records, without redactions.

**THIRD CLAIM FOR RELIEF**
**(Mandamus)**

33. As determined by the agency head, the ALJ, Greenpeace has a statutory right under FOIA to inspect the requested records.


34. After the ALJ issued its decision, defendants had a nondiscretionary duty under 5 U.S.C. § 552(a)(3) and 6 C.F.R. § 5.9(b) to make the requested records available in accordance with the ALJ's decision.

35. Greenpeace has been and will continue to be harmed by defendants' unlawful conduct because Greenpeace has no other recourse for obtaining the documents to which it is entitled, having exhausted all appeals and having received an appellate order mandating DHS and NPPD to provide Greenpeace with the unredacted records.

36. Defendants' unlawful redactions from the requested records warrants relief in the nature of mandamus if no other adequate remedy under FOIA or the APA is available to Greenpeace to compel the action required of DHS and NPPD by law.

**PRAYER FOR RELIEF**

Wherefore, plaintiff requests that this Court:

A. Declare that defendants' failure to provide the requested records in response to Greenpeace's FOIA request and in accordance with the ALJ decision is unlawful;

B. Order defendants to make the records responsive to plaintiff's FOIA request available to plaintiff at no charge within 14 days of the Court's order;

C. Award plaintiff its costs and reasonable attorney fees; and

D. Grant all other appropriate relief.

Dated: March 16, 2017

Respectfully submitted,

/s/ Scott L. Nelson
Scott L. Nelson (D.C. Bar No. 413548)
Sean M. Sherman
(*pro hac vice* application forthcoming)*
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiff Greenpeace, Inc.*

* Active member in good standing of the New York Bar, authorized to practice under the direct supervision of Scott L. Nelson pursuant to D.C. Bar Rule 49(c)(8) during the pendency of first application to the District of Columbia Bar submitted within 90 days of commencing practice in the District of Columbia.